IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

VEOLIA ES SPECIAL SERVICES, INC.,
(f/k/a Onyx Special Services, Inc.,)

            Plaintiff,

v.                                    CIVIL ACTION NO. 3:07-0153

TECHSOL CHEMICAL COMPANY, et al.,

            Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before this Court are numerous motions by the parties involved. Defendants Sloss Industries (Sloss), GATX Financial Corporation (GATX), Rescar, Inc. (Rescar), and Hiltop Investments, Inc. (Hiltop) have each moved to dismiss all counts asserted against them by the plaintiff, Veolia Es Special Services, Inc. (Veolia). These motions have been docketed in the Southern District of West Virginia as follows: Sloss's Motion to Dismiss (Doc. 100), GATX's Motion to Dismiss (Doc. 101), Rescar's Motion to Dismiss (Doc. 102), Hiltop's Motion to Dismiss (Doc. 106), and Sloss's Second Motion to Dismiss (Doc. 105). Plaintiff, Veolia, has submitted a Motion for Leave to File First Amended Complaint (Doc. 142).

As explained below, the briefing surrounding the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA) has been somewhat confusing. To clarify the situation, the Court will directly address the CERCLA arguments contained only within GATX's Motion to Dismiss. GATX's Motion to Dismiss (Doc. 101) is **DENIED** as it pertains to Count I, CERCLA. The issues surrounding unjust enrichment are more fully developed in brief, and addressed in full by this Court. As such, Sloss's motions to Dismiss (Docs. 100 and 105), GATX's Motion to

Dismiss (Doc. 101), Rescar's Motion to Dismiss (Doc. 102), and Hiltop's Motion to Dismiss (Doc. 106) are all **GRANTED** as they pertain to unjust enrichment alleged in Count II of the plaintiff's complaint. The portions of motions by other defendants that pertain to CERCLA claims are **DISMISSED** as premature. Finally, the portion of any motion seeking dismissal based on a lack of jurisdiction by a Kentucky court is **DISMISSED** as moot.

## Background

On October 28, 2004, a railroad tank car released 22,000 gallons of Coal Tar Light Oil (CTLO)[1] at Techsol Chemical Company's (Techsol) transloading facility in Westmoreland, West Virginia. Techsol immediately contacted the plaintiff, Veolia,[2] to begin cleaning up the release. Veolia performed the cleanup work but has not been paid for a substantial portion of it. The present action is a part of Veolia's efforts to receive compensation for its work.

The CTLO that ultimately spilled out of the railcar had been sold to Marathon Petroleum Company (Marathon) by Sloss. Sloss loaded the railcar at its plant in Birmingham, Alabama for ultimate delivery to Marathon's Catlettsburg, Kentucky facility. This railcar had been leased to Marathon by Defendant GATX.

Marathon was not able to accept the railcar at its Catlettsburg facility and the CTLO was sent to Techsol's transloading facility. This facility was owned by Defendant Hiltop. The parties

---

[1]CTLO is made up of 68% benzene, 24% toulene, and 7% xylene, and is also known as "BTX." The plaintiff referred to the spilled substance as BTX in the complaint, but the parties have more frequently referred to it as CTLO in their memoranda. The Court will refer to the substance as CTLO.

[2]At the time of the contract and of the spill Veolia Es Special Services, Inc. was known as Onyx Special Services, Inc.

planned to unload the substance from the railcar and load it into a tanker truck for final transport to Marathon, but the spill occurred before this transfer took place.

  The CTLO spill was apparently due to a top-operated, bottom-opening valve. This valve is located inside the railcar. An external cap covers the bottom opening, but the valve itself is operated by rotating a rod assembly on top of the car. When Techsol employees tried to transfer the CTLO from the railcar to the tanker truck, they believed the internal valve was closed and removed the external cap. Unfortunately, the valve was locked in the open position and CTLO gushed from the bottom of the railcar. The entire contents spilled onto the site.

  The day of the accident, October 28, 2004, Tecshol contacted Veolia and entered into a contract for cleanup of the site. Veolia began work that very day. At the time, both parties believed that Techsol had environmental insurance that would cover the cleanup work. On November 2, 2004, however, Techsol informed Veolia that insurance was not available and that it would not be able to pay Veolia for the work. That afternoon, pursuant to an order from the West Virginia Department of Environmental Protection, Marathon assumed responsibility for cleanup costs from 4:30 p.m. November 2, 2004 onward. Veolia remains uncompensated for work performed from October 28, 2004 until 4:30 p.m. on November 2nd.

  Veolia alleges that numerous parties failed to notice the open valve, each one of which should have prevented the spill. First, it contends that Sloss should have discovered the open valve when it loaded the railcar; next, that Rescar should have recognized the open valve during inspections before the railcar was sent to Sloss's facility; and finally, that Techsol should have discovered the open valve before removing the external cap. Veolia seeks recovery from GATX, based upon its ownership of the railcar, Hiltop as the owner of the real property upon which the spill

occurred, and Marathon as the lessee of the railcar and relationship to the contract for CTLO. Plaintiff's original complaint contained two counts. Claims under CERCLA were alleged in count one against Techsol, GATX, Marathon, and Sloss. In the second count, Veolia alleged unjust enrichment against all of the named defendants.

Briefing on the CERCLA issue has been somewhat confusing. Veolia originally based its CERCLA claim against Sloss on the mistaken allegation that Sloss owned the property where the spill occurred. Veolia later retracted that allegation, as well as the CERCLA claim against Sloss, in memoranda that followed discovery of the mistake. Adding to the difficulty of evaluating the CERCLA claim is the fact that some defendants, notably Rescar, responded to the CERCLA claim before they were named under Count One of the complaint. This opinion will only address the CERCLA claim directed against GATX, for this claim is fully briefed and ripe for resolution. As explained below, the Court finds that Plaintiff, Veolia, has made sufficient allegations under CERCLA to survive GATX's Motion to Dismiss.

Veolia wishes to submit an amended complaint reasserting its CERCLA claim against Sloss and adding Rescar and Hiltop to that count. As explained below, the Court grants this motion. While the Court has decided CERCLA issues raised by GATX, it has not resolved issues of whether particular parties are "covered persons" within the meaning of CERCLA § 107(a). Parties are not precluded from contesting their CERCLA liability on grounds that they are not covered persons within the meaning of the statute, or on other grounds this Court has not addressed.

Sloss, Rescar, Hiltop, and GATX have all moved to dismiss the unjust enrichment count alleged against them. The motions of each of these four defendants are ripe as they relate to the count of unjust enrichment. As explained below, the Court finds that Plaintiff, Veolia, has failed

to state a claim for which relief can be granted for unjust enrichment. Consequently, the motions of Sloss, Rescar, Hiltop, and GATX are all granted with respect to the count of unjust enrichment.

A final issue contained in some of the motions considered in this opinion is a relic attributable to the procedural history of this case. The complaint was originally filed in the Eastern District of Kentucky in the Ashland Division. Early in the proceedings defendant Hiltop filed a motion to dismiss for lack of jurisdiction or, in the alternative, to transfer venue to West Virginia. The Honorable Judge Henry R. Wilhoit, Jr. granted the transfer to West Virginia and overruled the portion of the motion asserting lack of personal jurisdiction as moot. Some argument regarding lack of personal jurisdiction still remains in the parties' memoranda. All of these remaining arguments, however, pertain to the lack of jurisdiction by the Kentucky court and appear only in memoranda originally filed when the case was in Kentucky. As such, the portion of any motion asserting a claim for lack of jurisdiction is dismissed as moot.

**Standard of Review**

In *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007), the United States Supreme Court recently disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which has long been used to evaluate complaints subject to 12(b)(6) motions. 127 S. Ct. at 1969. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 1964-65 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. at 1965 (citations omitted). If the allegations in the complaint,

assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 1966 (internal quotation marks and citations omitted). Two weeks after issuing its decision in *Twombly*, the Court emphasized in *Erickson v. Pardus*, 127 S. Ct. 2197 (2007), that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" 127 S. Ct. at 2200 (quoting *Twombly*, 127 S. Ct. at 1964 (other citations and some internal quotations omitted). Thus, "a universal standard of heightened fact pleading" is not required, rather it is "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*." *Iqbal v. Hasty*, 490 F.3d 143,157-58 (2d Cir. 2007) (italics original). It is under this revised standard that the Court must evaluate Plaintiff's Complaint in light of Defendant's 12(b)(6) motion.

## I. GATX's Motion to Dismiss For Failure to State A Claim Under CERCLA

As explained previously, the briefing surrounding the CERCLA claims alleged by Veolia has been confounded. To avoid any premature ruling on an issue, the Court will address only the arguments made by GATX in its motion to dismiss.

Congress enacted CERCLA in response to growing public concern over the improper disposal of hazardous substances. *S.C. Dep't. of Health and Envtl Control v. Commerce and Indus. Ins. Co.* 372 F.3d 245, 251 (4th Cir. 2004). The statute is recognized as having two principal goals, "(1) the promotion of prompt and effective cleanup of hazardous waste sites, and (2) the sharing of financial responsibility among those parties who created the hazards." *Id.* (internal citations

omitted). As part of the statutory scheme enacted to further these goals, Congress included § 107(a), which serves as the "principal mechanism for recovery of costs expended in the cleanup of waste disposal facilities." *U.S. v. Monsanto*, 858 F.2d 160, 167 (4th Cir. 1988) This section provides that certain "covered persons" associated with transport, a site or a facility

> from which there is a release, or a threatened release which *causes* the incurrence of response costs, of a hazardous substance shall be liable for –
> (A) all costs of removal or remedial action incurred by the United States Government or a State or an Indian tribe not inconsistent with the national contingency plan;
> (B) any other *necessary costs of response* incurred by any other person consistent with the national contingency plan. . .

42 U.S.C. § 9607(a) (emphasis added). Veolia seeks to recover its response costs based on this provision.

GATX argues that Veolia cannot take advantage of this statutory provision for two principal reasons. First, GATX argues that Veolia is unable to demonstrate that the release itself *caused* Veolia to incur costs in performing a cleanup. Rather, GATX argues that Veolia incurred costs as a direct result of their contract with Techsol. Under this theory, GATX explains, a party does not incur costs *caused* by a release unless that party has a "protectable interest" in the affected property. Second, GATX argues that the costs incurred by Veolia were not *necessary costs* within the meaning of the statute. GATX contends that the cost to Veolia was merely the lost economic benefit of the contract and that this economic loss in not compensable under CERCLA. Neither of these arguments is persuasive to the Court.

*A. Veolia Has Sufficiently Alleged That The Costs It Incurred Were Caused By The Spill.*

The Court disagrees that the word *causes* in § 107(a) requires a party to have a "protectable interest" in the site or facility affected. Such a requirement is contrary to a plain reading of the statutory text. Upon examination of § 107(a), in a case with facts similar to those present here, the Fifth Circuit Court of Appeals reached this same conclusion. *See OHM Remediation Servs. v. Evans Cooperage Co., Inc.* 116 F.3d 1574, 1579-1580 (5th Cir. 1997) (hereinafter *OHM*).

The plaintiff in *OHM* successfully abated a spill of 450,000 gallons of hazardous material, near Baton Rouge, Louisiana, pursuant to a contract with Louisiana Oil. *Id.* at 1577-78. Louisiana Oil was not able to pay for the services, however, and OHM sued other potentially responsible parties to recover the costs it incurred during cleanup. *Id.* Defendants in that case raised a defense focused on the statutory term *causes*, identical to the one raised by GATX in the instant case. *Id.* at 1579. The court rejected this argument in an analysis principally based upon the statutory text. *See id.* at 1579-80. First, the court noted that the word *causes* was equally applicable to response costs sought by the United States Government as it was to response costs sought by "any other person." *Id.* at 1580. The court reasoned that "Congress surely did not require the government to have a protectable interest in any [CERCLA] site for which it incurs response costs, and it makes little sense to infer that requirement for private parties." *Id.* Second, the court looked to the plain meaning of the word *cause* and found it satisfied on the facts. *See id.* They explained, "[i]n the case at hand, if no release had occurred, OHM would not have had to incur response costs in cleaning up the site. In that respect, the spill 'caused' OHM's response costs." *Id.* The reasoning of the Fifth Circuit Court of Appeals in *OHM* is sound and especially persuasive here; that court was concerned with a directly analogous situation and guided by the same statutory provision.

Although a textual analysis of § 107(a) would itself be enough to support the interpretation advocated by Veolia, further support is gained by analyzing the policy objectives which motivated Congress to enact CERCLA. Policy objectives may not be enough to warrant the disregard of statutory text, but neither does text exist in a vacuum. "In undertaking the task of statutory construction, [a court] must not be guided by a single sentence or member of a sentence, but instead must look to the provisions of the whole law, and to its object and policy." *Elm Grove Coal Co. v. Director O.W.C.P.* 480 F.3d 278, 293 (4th Cir. 2007). Accepting GATX's interpretation of § 107(a) would hinder both Congressional policy objectives – 1) prompt and effective cleanup of hazardous waste sites, and 2) shared financial responsibility for cleanup among the parties who created the hazard – while accepting Veolia's interpretation would further both goals.

First, precluding a cost recovery under § 107(a) for a plaintiff such as Veolia would add potential delays to the response. A contractor capable of performing cleanup services, but unconnected to a spill, would be motivated to investigate the financial circumstances of a potential client before initiating cleanup if response costs were unavailable under CERCLA. In this case, for example, Veolia took little time to investigate Techsol's claim that environmental insurance would cover the cost of cleanup and began address the CTLO spill the same day it occurred. Investigation of Techsol's insurance claims likely would have taken significant time – as the complaint states, Techsol did not inform Veolia of its mistake for four days. Further, any interpretation of CERCLA that dissuades private parties from entering into a cleanup contract, like the one between Techsol and Veolia, would probably result in a greater governmental role in cleanup. This increased role of government agencies would add another potential factor for delay. Contracts for cleanup between private parties are the most efficient way to deal with a problem such as hazardous waste

contamination and such contracts should not be discouraged. Doing so does harm to the Congressional policy of prompt and effective cleanup.

Second, if GATX's reading of the statute were accepted, parties who contributed to a hazardous waste site could avoid financial responsibility while leaving an innocent party to bear the cost of cleanup. Again, the present case illustrates how such a situation might occur. The primary motivation behind Veolia's cleanup efforts in this case may have been the money to be made off of the project – Veolia is after all a corporation, and corporations are generally meant to be profitable. There is no allegation, however, that Veolia contributed to, or exacerbated the effects of the CTLO spill. While the Court is in no way ready to rule on which, if any, of the named defendants are liable for the spill, Veolia appears innocent in the matter. Congressional policy dictates that someone other than Veolia should be responsible for paying the costs associated with this accidental spill. The plaintiff's reading of the statute furthers that policy.

Together, the text of § 107(a) and the policy objectives Congress sought to further with the enactment of CERCLA preclude this Court from accepting GATX's proposed interpretation. Requiring a party to have a protectable interest in a site or facility in order to show that a release *caused* its response costs stretches the statutory language beyond a common sense understanding of the text. Additionally, imposing such a requirement does damage to the twin policy aims of the statute. Under such circumstances the Court refuses to impose the suggested protectable interest requirement on a party who has undertaken cleanup efforts, and finds that the costs incurred by Veolia were indeed caused by the release within the meaning of § 107(a).

*B. Veolia Has Sufficiently Alleged That The Costs It Incurred Were Necessary Response Costs*

GATX also argues the Veolia cannot use CERCLA to recover cleanup costs because those costs were not *necessary response costs* within the meaning of the statute.  Again, this argument is based on the fact that Veolia had no direct interest in the contaminated site, but became involved only through its contract with Techsol.  GATX categorizes Veolia's losses as "economic losses" because they were principally a missed opportunity to reap a profit under the contract.  Such losses, contends GATX, do not fit within the statutory meaning of *necessary response costs*.

It is true that one can find CERCLA case law with statements that economic losses cannot be recovered under the statute.  *See e.g. Artesian Water Co. v. Gov't of New Castle County*, 851 F.2d 643, 648-51 (3rd Cir. 1988); *Brasewell Shipyards, Inc. v. Beazer East, Inc.* 2 F.3d 1331, 1337 (4th Cir. 1993). This was even noted in one of the earliest Supreme Court cases concerning the statute. *See Exxon Corp v. Hunt* 475 U.S. 355 (1986) (. . . nor is [CERCLA] money available to compensate private parties for economic harms that result from discharges of hazardous wastes.") The category of economic loss, however, does not seem so broad as GATX would have this Court find.  Rather, economic losses are precluded precisely because they are not response costs, and because CERCLA was never intended to be a federal toxic tort statute.  *See County Line. Inv. Co. v. Tinney*, 933 F.2d 1508, 1517 (10th Cir. 1991).

The case of *Artesian Water Co.,* is often cited for the proposition that economic losses are non-recoverable.  The facts of that case are illustrative of what should be precluded as an economic loss.  In *Artesian Water Co.*, the plaintiff tried to recover profits lost because it could not pump water from its well fields at full capacity; doing so would have jeopardized the fields by interfering with a hazardous waste containment project.  851 F.2d 645-46.  The court held that this type of loss

was not compensable under the statute. *Id.* at 650-51. In so holding the court noted that "[b]y eliminating economic loss to victims and emphasizing cleanup costs, Congress tried to limit liability – at least until further experience might lead to appropriate modification of the Act." *Id.* at 650. Despite its inability to recover economic losses, the company was allowed to recover costs it had expended for monitoring and evaluating the impact of the waste on the well field, even though the state had already taken measures to contain the problem. *Id.* at 651-32. In *Brasewell Shipyards, Inc.,* the Fourth Circuit Court of Appeals cited *Artesian Water Co.* for the proposition that "[d]amages for diminution in property value and lost income are not recoverable under CERCLA." 2 F.3d at 1337. The Supreme Court has also examined the meaning behind the phrase, *necessary response costs*, and found it to encompass expended costs that "increase[] the probability that a cleanup will be effective and get paid for." *See Keytronic Corp. v. U.S.* 511 U.S. 809 (1994). The precise issue before the Court in *Keytronic* was whether attorney's fees accrued in a private CERCLA action could be recovered as necessary response costs. *Id.* at 811. The Court held that litigation related attorneys fees would not be recoverable, but not all attorneys fees could be precluded. *Id.* at 819-20. The Court reasoned that certain fees were generated while identifying parties who could be held responsible for cleanup, and such fees were recoverable because they "significantly benefitted the entire cleanup effort and served a statutory purpose . . ." *Id.* at 820.

Veolia seeks to recover the costs it incurred during the cleanup of 22,000 gallons of a hazardous substance. While Veolia may not have gotten involved in the cleanup effort had it not been party to a contract with Techsol, this fact alone should not preclude it from recouping the costs it expended while responding to the CTLO spill. Veolia is neither attempting to use CERCLA as a federal toxic tort statute, nor circumventing state law tort claims. Veolia is not trying to receive

compensation for lost resources or a diminution in the value of its property. Clearly, the costs incurred by Veolia significantly contributed to the cleanup effort and furthered the statutory purpose of prompt and effective recovery. Based on the allegations in the complaint, it was Veolia alone who actually performed the cleanup work. In short, the plaintiff has properly alleged and will plausibly be able to show that it incurred necessary response costs within the meaning of CERCLA § 107(a). As such GATX's Motion to Dismiss for failure to state a claim under CERCLA is **DENIED**.

## II. Veolia's Motion for Leave to File First Amended Complaint

Veolia has filed a Motion for Leave to File First Amended Complaint in order to add defendants Rescar and Hiltop to Count One, which seeks cost recovery under CERCLA. Additionally, Veolia seeks to reassert its CERCLA claim against Sloss Industries. Rescar and Sloss have filed responses opposing this motion to amend the original complaint. Both Rescar and Sloss contend that the CERCLA claim against them in the amended complaint is futile. Sloss additionally argues that because Veolia made repeated admissions that it had not alleged a CERCLA claim against Sloss, Veolia should not be allowed to assert such a claim now.

Federal Rule of Civil Procedure 15(a) provides that a leave to amend "shall be freely given when justice so requires." The liberal allowance for amendments furthers the federal policy favoring a resolution of cases on the merits. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006) (citing *Conley v. Gibson,* 355 U.S. 41, 48 (1957)). "[L]eave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile." *Id.* A denial based on futility

should only be granted when the proposed amendment is "clearly insufficient or frivolous on its face." *Johnson v. Oroweat Foods Co.* 785 F.2d 503, 510 (4th Cir. 1986).

The Court is unable to find that Veolia's CERCLA claims against Rescar and Sloss are clearly insufficient or frivolous on their face. As explained in the preceding section, Veolia's status as a contractor in the cleanup is not itself enough to preclude it from taking advantage of CERCLA § 107(a). Although both Rescar and Sloss claim that they are not "covered persons" within the meaning of the statute, this issue has not been thoroughly briefed by all parties nor developed factually to a point where the Court is ready to determine the issue. Certainly, the defendants' status (or lack thereof) is not so evident as to be clear from the face of the complaint.

Although Veolia's statements in memoranda indicated that it had not previously asserted a CERCLA claim against Sloss, this is not enough to warrant prejudice, and there is no evidence or allegation of bad faith. At the time these statements were made Veolia knew that it had mistakenly alleged that Sloss was the owner of the site where the spill occurred. Because the original CERCLA claim against Sloss was premised upon that mistake, Veolia was correct in denying that there was a valid CERCLA claim against that defendant. Now, Veolia reasserts this CERCLA claim on other grounds. At the present stage of litigation there is ample time for Sloss to respond to this allegation. Because of the lack of bad faith, prejudice, or futility and because granting leave to amend the complaint will further the interests of justice, Veolia's Motion for Leave to File First Amended Complaint is **GRANTED**.

### III. Defendants' Motions to Dismiss Veolia's Claim for Unjust Enrichment

Defendant's GATX, Sloss, Rescar and Hiltop have each moved to dismiss Veolia's unjust enrichment claim against them. Unlike the CERCLA claim, there has been no confusion over which

-14-

defendants are named under this count. Consequently, the Court has considered, and this opinion addresses the arguments made by each of these defendants. The dismissal of Count II of the complaint is likewise applicable to each of these defendants.

A claim of unjust enrichment generally entails the establishment of three elements: (1) a benefit conferred upon the plaintiff, (2) an appreciation or knowledge by the defendant of such benefit, and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without payment of its value. 26 Williston on Contracts § 68:5 (4th ed.)[3] The West Virginia Supreme Court has explained, "[t]he law of unjust enrichment indicates that if one person improves the land of another either through the direction of services to the land, or through the affixation of chattels to the land, that person is entitled to restitution for the improvements if certain other circumstances are present." *Realmark Developments, Inc. v. Ranson* 542 S.E.2d 880, 884 (W. Va. 2000) (citing Restatement, *Restitution* § 53 (1937)). These "other circumstances" are laid out in a footnote, which quotes from the Restatement of Restitution § 53. It provides that restitution should be provided if services were rendered,

> (a) because of a fraudulent misrepresentation of law by the other, or because of an innocent misrepresentation of law by the other upon which the one rendering the services justifiably relied, or

---

[3] When the Kentucky District Court transferred venue to West Virginia, it held that West Virginia substantive law would apply to the unjust enrichment claim. The parties do not dispute that West Virginia law applies and have not briefed this Court on choice of law. In any case, Kentucky and West Virginia law do not differ substantially on the issue of unjust enrichment. To simplify the analysis this Court will apply general principles of unjust enrichment, applicable under both Kentucky and West Virginia law, and will apply West Virginia law to further illuminate these general principles.

> (b) to obtain the performance of an agreement made with the other therefor, not operative as a contract, or voidable as a contract and avoided by the other party after the services were rendered, the transferor erroneously believing because of a mistake of law that the agreement bound the other, or
> (c) in the discharge of a duty of the other or in the release of the other's property from an adverse interest under the conditions stated in § 54.

*Rest. of Restitution* § 53.

As there is no allegation of any misrepresentation of law or an agreement made between Veolia and GATX, Sloss, Rescar or Hiltop, a claim for restitution must rely on the discharge of a duty. This discharge of a duty brings in further conditions contained within § 54 of the Restatement. Section 54, however, only allows recovery in restitution if the party relieving another of a duty did so with the belief that this first party was releasing his own property from a claim. As Veolia had no interest or connection to the cleanup site, it is impossible to find that it believed it was releasing its own property from a claim and it therefore has not made a claim for unjust enrichment under this test.

The West Virginia Supreme Court arguably laid out a second test for recovery under unjust enrichment when it stated,

> [t]he Court has also indicated that if benefits have been received and retained under such circumstances that it would be inequitable and unconscionable to permit the party receiving them to avoid payment therefor, the law requires the party receiving them to avoid payment therefor, the law requires the party receiving the benefits to pay their reasonable value.

*Realmark* at 884-85. This statement makes clear that to find for the plaintiff on a theory of unjust enrichment it must be "inequitable *and* unconscionable" for the party to avoid paying for the benefit.

-16-

To support its claim of unjust enrichment Veolia alleges, "[a]ll of the defendants named herein had a responsibility pursuant to 42 U.S.C. 9601 et seq. and/or federal common law and state common law to take response action at the site or to provide compensation for cleanup services." *See* First Am. Compl. at ¶ 47 (Doc. 142). The complaint continues, "Veolia has conferred benefits upon and unjustly enriched the defendants in that Veolia has incurred expenses for cleanup services for which the defendants would otherwise have been responsible to pay and for which Veolia has not been compensated." *Id* at ¶ 48. Veolia has thus alleged that under CERCLA (42 U.S.C. 9601 et. seq.) or some other undefined law the defendants had a duty to clean up the spill, and received a benefit by not having to fulfill that duty.

As explained above Veolia has made sufficient allegations to avoid a motion to dismiss on its CERCLA recovery claim. It is unclear to the Court, however, how an assertion of a CERCLA claim can be the basis for recovery under unjust enrichment. CERCLA is a strict liability statute and requires no wrong-doing or culpability for a defendant to be held responsible. *See Crofton Ventures Ltd. Partnership v. G & H Partnership*, 258 F.3d 292, 296 (4th Cir. 2001). Instead, CERCLA mandates contributions from any party that meets a statutory definition of "covered person." *See* 42 U.S.C. § 9607(a). Although, as discussed previously, one of the Congressional goals in enacting CERCLA was to ensure shared fiscal responsibility among those who created the hazard, the other overarching goal was ensuring swift and effective cleanup. The way Congress choose to effectuate these goals was a broad strict liability provision encompassing all potentially responsible parties under § 107(a) and further delineation of fiscal responsibility *after* cleanup had occurred, through the use of § 113(f). *See* 42 U.S.C. § 9613(f); *Cooper Industries v. Availl Services, Inc.* 543 U.S. 157 (2004). The allegations required to show that a party meets a statutory definition for strict liability

-17-

are far different than allegations required to show that a party created an unjust – in West Virginia, inequitable and unconscionable – situation.

Although not specifically alleged, Veolia does suggest in both its original and amended complaint that Sloss and Rescar might be liable on a negligence theory because each should have discovered the faulty valve, and doing so would have prevented an accident. Under general tort principles, however, it is doubtful that Veolia would be able to assert a negligence claim against either Sloss or Techsol; there does not appear to be a duty owed by either of these defendants to Veolia. In West Virginia, as most other states, the existence of a duty is grounded in forseeability. *Glasock v. City Nat. Bank of West Virginia*, 576 S.E.2d 540, 544 (W. Va. 2002). "The test is, would the ordinary man in the defendant's position, knowing what he knew or should have known, anticipate that harm of the general nature of that suffered was likely to result?" *Id.* (quoting Syl. pt. 3, *Sewell v. Gregory,* 371 S.E.2d 82 (W. Va. 1988)). While the defendants may have been able to anticipate that a failure to carefully inspect the railcar could lead to spill, the harm suffered by Veolia is a step removed. While the harm suffered due to a failure to receive compensation for cleanup may be redressable under the strict liability framework of CERCLA, it seems too remote under a tort theory of negligence. In any case, Veolia has not specifically alleged negligence. Allowing Veolia to move forward on an unjust enrichment claim with the mere suggestion of negligence, would effectively permit the plaintiff to indirectly assert a tort claim while circumventing essential tort principles. The suggestion of negligence is insufficient to support an allegation of unjust enrichment.[4]

---

[4]The Court notes that the defendants have also argued that a tort claim would be preempted by the Federal Railroad Safety Act. Without a specific allegation in tort the Court refuses to
(continued...)

Without further allegations to flesh out the source of injustice, Veolia is left arguing that it would be inequitable for them not to receive payment from GATX, Sloss, Rescar and Hiltop, because all of these defendants benefitted from the contract between Veolia and Techsol, and Techsol never performed its contractual obligation of payment. This kind of argument, however, is specifically precluded under the Restatement of Restitution. Section 110 of that Restatement provides, "A person who has conferred a benefit upon another as the performance of a contract with a third person is not entitled to restitution from the other merely because of the failure of performance by the third person." Veolia has therefore failed to provide sufficient allegations of law and fact to set forth a plausible claim for unjust enrichment against GATX, Sloss, Rescar, and Hiltop.

Motions by these defendants for dismissal of the unjust enrichment claims against them are therefore **GRANTED.**

### Conclusion

In summary, Veolia, has set forth sufficient allegations to survive a motion to dismiss under the statutory requirements of CERCLA's cost recovery provision. Both a plain reading of the statutory text and a consideration of statutory policy support this conclusion. A well-pled CERCLA claim is not itself, however, sufficient grounds to show that defendants GATX, Sloss, Rescar, and Hiltop received a benefit that it would be inequitable and unconscionable for them to retain. Veolia has failed to provide any allegations that would plausibly show the kind of injustice critical to a

---

[4](...continued)
speculate about the effects of preemption, or engage in any further analysis of a hypothetical tort claim. It is sufficient for these purposes that indirect allegations of negligence will not suffice to show inequity and unconscionability for purposes of unjust enrichment.

claim of unjust enrichment. While Veolia's CERCLA claim remains, Veolia's unjust enrichment claim, as alleged against GATX, Sloss, Rescar, and Hiltop, must fail.

For the reasons explained above, the Court **GRANTS** Plaintiff, Veolia's, Motion for Leave to File First Amended Complaint (Doc. 142). The Court **GRANTS** defendants' GATX, Sloss, Rescar and Hiltop's motions to dismiss (Docs. 100, 101, 102, 105 and 106) as they pertain to unjust enrichment. The Court **DENIES** defendant GATX's Motion to Dismiss as it pertains to CERCLA § 107(a). The Court **DISMISSES** as premature, motions to dismiss by Sloss, Rescar, and Hiltop as they pertain to the plaintiff's claim under CERCLA. The Court **DISMISSES** as moot motions to dismiss by GATX, Sloss, Rescar, and Hiltop as they pertain to lack of jurisdiction by the Kentucky Court.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

        ENTER:        November 30, 2007

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE