UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
at HUNTINGTON

| | |
|---|---|
| VEOLIA ES SPECIAL SERVICES, INC. (f/k/a Onyx Special Services, Inc.), | ) ) ) |
| Plaintiffs | ) ) ) Civil Action No. 3:07-cv-00153 |
| v. | ) ) Electronically Filed |
| TECHSOL CHEMICAL COMPANY, HILTOP INVESTMENTS, INC.; GATX FINANCIAL CORPORATION; MARATHON PETROLEUM COMPANY, LLC; RESCAR, INC.; and SLOSS INDUSTRIES CORPORATION, | ) ) ) ) ) ) ) |
| Defendants. | ) |

**MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

AND NOW comes Defendant, Rescar, Inc. (hereinafter referred to as "Rescar"), by and through its attorneys, GEORGE N. STEWART, ESQUIRE, ALEX P. BICKET, ESQUIRE and ZIMMER KUNZ, PLLC  and submits the following Memorandum in support of its Motion for Summary Judgment.

**Pertinent Procedural and Factual History**

As this Court is aware, this case arises out of the spill of 23,000 gallons of Coal Tar Light Oil (CTLO) in Westmoreland, West Virginia, on October 28, 2004.  The CTLO spilled out of a railroad tank car, GATX 71782.  Veolia ES Special Services, Inc. ("Veolia") was hired by TechSol Chemical Company ("TechSol") to perform emergency response remediation.

Marathon leased a number of railroad tank cars from defendant GATX Financial Corporation ("GATX"), including GATX 71782, which Marathon used to transport CTLO that it

818682
0170.0337

purchased from defendant Sloss Industries Corporation ("Sloss")[1] in Birmingham, Alabama to Marathon's refinery in Catlettsburg, Kentucky. Rescar had a contract with Marathon to perform inspection, maintenance, repairs and cleaning of railcars from time to time, including GATX 71782, at the Catlettsburg refinery. (See Document 195, Marathon's amended cross-claim, Exhibit C). In 2003, while Marathon's railroad tank car unloading rack at its Catlettsburg refinery was off-line, Marathon could no longer unload railroad tank cars and temporarily had to receive CTLO by tanker truck. Marathon retained TechSol to "transload" the railroad tank cars at its Westmoreland facility into tanker trucks that could then be brought into the Catlettsburg refinery to be unloaded.

Marathon retained and continued to use TechSol to perform these transloading services, despite: (a) Marathon's knowledge that TechSol itself was concerned about its ability to perform this type of work (see 11/21/03 email from James McIntosh and 11/24/03 email from Ray Scholes attached hereto as Exhibit 1); (b) TechSol lacked spill-containment required by law to prevent any spill from escaping into the residential neighborhood where TechSol was situated; and (c) TechSol did not have the necessary insurance, as required by Marathon's contract with TechSol, to cover a potential loss. In addition, Marathon continued to use the services of TechSol after the contract was entered into even though it had been advised of three adverse incidents at TechSol involving the transloading procedure, was aware that the West Virginia Department of Environmental Protection ("DEP") had issued a Cease and Desist Order to TechSol, and was advised by its own employees at the Catlettsburg refinery to stop using TechSol to transload the CTLO. (See DOT Hazardous Materials Incident Reports attached hereto as Exhibit 2; Cease and Desist Order

---

[1] Marathon uses CTLO as a "feed stock" in its refinery operations.

attached hereto as Exhibit 3; and emails from various Marathon employees attached hereto as Exhibit 4).

On October 28, 2004, TechSol employees attempted to transload CTLO from Railcar GATX 71782, when the contents of the railcar were released, and escaped into the surrounding environment.

Although Veolia performed initial clean up of the release ostensibly at the request of TechSol, the State of West Virginia soon ordered Marathon to take charge of the remediation. Veolia claims to have incurred roughly $640,000.00 in response costs for six days of work for TechSol, which TechSol has failed to pay.

In May, 2009, a trial on Marathon's cross-claims against co-defendants in the John Adkins suit was held in Wayne County, West Virginia. Prior to trial, the Court ruled that, as a matter of law, Marathon was responsible for the conduct of TechSol. (See Memorandum and Opinion of Judge Pratt attached hereto as Exhibit 5). After exhaustive evidence was presented at trial, the jury returned a verdict finding Marathon 60% at fault for the 10/28/04 spill, TechSol 30% at fault and Rescar 10% at fault. (See Judgment Order attached hereto as Exhibit 6). Consequently, in light of the Court's pretrial ruling, Marathon was found to be 90% at fault for the spill that occurred.[2]

In this suit, Veolia's first amended complaint (Document 158) is the operative pleading. In the amended complaint, Veolia generally pleads that Defendants, including Rescar, are liable to Veolia under CERCLA, 42 U.S.C. § 9607(a) [CERCLA § 107(a)], and on unspecified federal and state common law grounds. Defendants Hiltop and GATX filed crossclaims against Rescar,

---

[2] In a related event, on October 14, 2009, James R. Holt was indicted by a Federal Grand Jury for his role leading up and contributing to the spill of CTLO in Westmoreland, West Virginia on 10/28/2004. (See Indictment attached hereto as Exhibit 7).

seeking contribution pursuant to 42 U.S.C.A. § 9613(f) [CERCLA § 113(f)], asserting that if they are found liable, they are entitled to have that liability apportioned among all "joint tortfeasors", including Rescar. (Documents 159 and 164).

On March 14, 2008, this Court filed a Memorandum Opinion and Order granting in part Rescar's motion to dismiss Marathon's cross-claim. (Document 213, attached as hereto as Exhibit 8). The Court ruled that Rescar is not a "covered person" under CERCLA, 42 U.S.C. § 9607. Section 9607 describes four categories of "covered persons" subject to liability under CERCLA. This Court rejected Marathon's arguments that Rescar may be liable (1) as a "current owner or operator"; (2) as an owner or operator at the time of disposal; and (3) as an entity which "arranged for disposal or treatment" of hazardous substances at [a] facility". The Court noted that Marathon did not allege Rescar's liability under the fourth and final category pursuant to which liability may be imposed under CERCLA—a person who accepts a hazardous waste for transport. No facts exist under which a claim might be asserted against Rescar under this theory; Rescar did not "accept [CTLO] for transport".

Rescar submits that the Court's ruling of March 14, 2008 is correct, and it is dispositive of the question here, i.e., whether Rescar is a "covered person" who may be liable to any party under CERCLA. As set forth below, the answer to that question is no, and judgment should be entered in favor of Rescar.

## Argument

The "law of the case" doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988).

> Under the law of the case doctrine, as a practical matter, once the "decision of an appellate court establishes 'the law of the case,' it 'must be followed in all subsequent proceedings in the same case in the trial court or on a later appeal . . . unless: (1) a subsequent trial produces substantially different evidence, (2) controlling authority has since made a contrary decision of the law applicable to the issue, or (3) the prior decision was clearly erroneous and would work manifest injustice.'"

*United States v. Aramony*, 166 F.3d 655, 661 (4th Cir. 1999), quoting *Sejman v. Warner-Lambert Co.*, 845 F.2d 66, 69 (4th Cir. 1988). Although the doctrine applies most readily to decisions of appellate courts or parallel trial courts, the principles of the doctrine are largely persuasive of Rescar's argument that this Court should grant summary judgment in its favor on Plaintiff Veolia's CERCLA claim.

Under CERCLA four classes of "covered persons" may be liable for response costs. 42 U.S.C.A. § 9607(a). The four covered classes are: (1) owner or operator of vessel or facility; (2) any person who at the time of disposal owned or operated any facility at which hazardous substances were disposed; (3) any person who arranged for the disposal or treatment of hazardous substances; (4) and any person who accepts or accepted hazardous substances for disposal or treatment. § 9607(a)(1)-(4).

In its Memorandum Opinion and Order of March 14, 2008, this Court granted Rescar's motion to dismiss Marathon's crossclaim against Rescar for relief under CERCLA. The Court ruled that Rescar is not a "covered person", and therefore is not a "potentially responsible person," within the meaning of the CERCLA statute. (Document. 213). Like Marathon, Veolia has asserted that Rescar may be liable as a current owner, previous owner or possessor, or arranger. Plaintiff has not pleaded a theory of liability against Rescar different from the claim asserted by Marathon, or offered any evidence which would support a different ruling. Therefore, the same disposition is appropriate with respect to Plaintiff Veolia's CERCLA claim against Rescar.

Since this Court filed its Memorandum Opinion and Order, the United States Supreme Court in *Burlington Northern & Santa Fe Railway Co. v. United States*, 129 S. Ct. 1870 (2009) clarified §9607(a)(3), and specifically addressed the question of a party's liability as an "arranger" under CERCLA. *Burlington Northern* offers further support of this Court's ruling that Rescar is not a "covered person" under CERCLA, and therefore has no liability under the statute.

In *Burlington Northern*, the Court held that because §9607(a)(3) does not specifically define what it means to "arrang[e] for" the disposal of hazardous substances, the language should be given its ordinary meaning. *Id*., 129 S. Ct. 1870, 1879 (2009). The Court held that "an entity may qualify as an arranger under §9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id.* Petitioner Shell Oil Company (Shell) sold the pesticide D-D to Brown & Bryant, Inc. (B&B), some of which spilled during transfers and deliveries. *Id.* at 1875. Although Shell was aware that minor spills had occurred during the transfer of D-D to B&B's storage tanks after the product became B&B's, the Court found that Shell had taken numerous steps to encourage its distributors to reduce the likelihood of such spills. *Id.* Shell's mere knowledge of the continuing spills and leaks was insufficient to support a determination that it had "arranged for" D-D's disposal. *Id.* at 1880.

In reaching its decision, the Court began by analyzing the language of §9607(a)(3), which applies to an entity that "arrange[s] for disposal . . . of hazardous substances." *Id.* at 1878. The Court emphasized that whether an entity is an arranger "requires a fact-intensive inquiry that looks beyond the parties' characterization of the transaction as a 'disposal' or a 'sale' and seeks to discern whether the arrangement was one Congress intended to fall within the scope of CERCLA's strict-liability provisions." *Id.* at 1879. The Court made clear, however, that liability under §9607(a)(3) may not extend beyond the limits of the statute itself. *Id.* In giving the phrase

"arrang[e] for" disposal of a hazardous substance its ordinary meaning, the Court emphasized that "arrange" implies action directed to a specific purpose and implies intentional action: "[U]nder the plain language of the statute, an entity may qualify as an arranger under §9607(a)(3) when it takes intentional steps to dispose of a hazardous substance." *Id.* Moreover, the Court acknowledged that while an entity's knowledge that its product will be leaked, spilled, dumped or otherwise discarded may show intent to dispose of hazardous substances, "knowledge alone is insufficient to prove that an entity 'planned for' the disposal." *Id.* at 1880.

The categories of "covered persons" who are potentially liable under the statute reach back through the causal chain from *those who ultimately dispose* of a hazardous substance to *those who transport and generate* the hazardous substance. *Pneumo Abex Corp. v. High Point Thomasville and Denton R.R. Co.*, 142 F.3d 769, 774 (4th Cir. 1998). As this Court correctly observed in its Memorandum of March 14, 2008, the Fourth Circuit held that to fall within the third category of "covered persons" for "treatment . . . of hazardous substances," one must have arranged for "the processing of discarded hazardous substance or processing resulting in the discard of hazardous substances." *Id.*. Nothing in the Court's ruling in *Burlington Northern* changes this proposition.

As this Court found, based on the allegation that Rescar's role was to inspect railcars, where Rescar had no role or decision making authority relating to the processing or disposal of CTLO, Rescar cannot fit within the category of "arranger." Rather, as held by the Court in *Burlington Northern*, imposing liability under CERCLA requires that an entity may be considered an "arranger" <u>only</u> when it takes intentional steps to dispose of a hazardous substance. Rescar did not take any intentional steps to dispose of or treat the hazardous substance, and Rescar had no specific purpose or intention of doing so. Rescar's sole function and purpose was to perform

maintenance, repairs and cleaning on railcars for Marathon, and such an arrangement is not one that Congress intended to fall within the scope of CERCLA's strict-liability provisions.

**Conclusion**

This Court's decision to dismiss Marathon's CERCLA claims against Rescar because Rescar is not a "covered person" under CERCLA was clearly correct. Rescar does not fall into any one of the four categories of "covered persons" under 42 U.S.C. § 9607(a)(1)-(4). Therefore, Rescar's Motion for Summary Judgment should be granted with respect to Veolia's CERCLA claims and co-defendants' cross-claims under CERCLA, because Rescar is not a "covered person" subject to liability under 42 U.S.C. §9607(a).

Respectfully submitted,

ZIMMER KUNZ, PLLC

By  s/Alex P. Bicket
   W.V. State Bar No. 6521
   3300  US Steel Tower
   600 Grant Street
   Pittsburgh, PA 15219
   (412)281-8000

Date: November 23, 2009                     Attorneys for Rescar, Inc., Defendant

## **CERTIFICATE OF SERVICE**

I certify that on November 23, 2009, I electronically filed the foregoing Defendant Rescar, Inc.'s Memorandum in Support of Motion for Summary Judgment with the clerk of the court using the CM/ECF system with electronic service upon the following:

| | |
|---|---|
| W. Mitchell Hall, Jr. | whall@vmje.com |
| Leigh Gross Latherow | llatherow@vmje.com |
| Donald B. O'Dell | dbo@lampodell.com |
| James D. Lamp | jdl@lampodell.com |
| Shawn P. George | sgeorge@citynet.net |
| Randall T. Trautwein | rlt@lampodell.com |
| Brian M. Johnson | bmj@gdm.com |
| David Andrew Owen | dao@gdm.com |
| Matthew J. Perry | mjp@lampodell.com |
| Paul T. Farrell | ptf@farrell3.com |
| Matthew A. Stinnett | mas2@gdm.com |
| J. David Bolen | jbolen@huddlestonbolen.com |
| Joseph M. Farrell, Jr. | jmf@farrell3.com |
| Donald R. Richardson | drr@lampodell.com |
| D. Alan Rudlin | arudlin@hunton.com |
| Travis S. Sanders | tsanders@vmjc.com |
| Thomas E. Scarr | tes@jenkinsfenstermaker.com |
| George P. Sibley, III | gsibley@hunton.com |
| Marc E. Williams | mwilliams@huddlestonbolen.com |

I further certify that I mailed, via U.S. mail the foregoing documents and notice of electronic filing to the following:

Clinton J. Elliott, Esquire
Edward H. Stopher, Esquire

818682
0170.0337

BOEHL STOPHER & GRAVES
2300 Capitol Holding Center
400 West Market Street
Louisville, KY 40202-3345

Donald B. O'Dell, Esquire
LAMP O'DELL BARTRAM LEVY & TRAUTWEIN
P. O. Box 2488
Huntington, WV 25725

W. Mitchell Hall, Jr., Esquire
VanANTWERP, MONGE, JONES, EDWARDS & McCANN, LLP
1544 Winchester Avenue, Fifth Floor
P. O. Box 111
Ashland, KY 41105-1111

                                                  _/s/Alex P. Bicket_____
                                                  Alex P. Bicket