**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

VEOLIA ES SPECIAL SERVICES, INC., (f/k/a Onyx Special Services, Inc.,)

Plaintiff,

v. CIVIL ACTION NO. 3:07-0153

HILTOP INVESTMENTS INC., et al.,

Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending are motions by defendants Rescar Inc. ("Rescar") and Sloss Industries Corporation ("Sloss") for summary judgment on claims filed against them under the Comprehensive Environmental Response Compensation and Liability Act ("CERCLA"). Also pending is defendant GATX Financial Corp.'s ("GATX's") motion to amend its cross-claims against Rescar and Sloss. For the reasons explained below, the Court **GRANTS** motions by both Rescar and Sloss for summary judgment. (Docs. 336 and 357). These defendants, however, will remain parties to the case, as the Court additionally **GRANTS** GATX's motion to amend. (Doc. 375).

**Background[1]**

This case began with a spill of Coal Tar Light Oil ("CTLO") from a railcar at the now defunct Techsol Chemical Company ("Techsol") transloading facility in Westmoreland, West Virginia. Plaintiff, Veolia Es Special Services, Inc. ("Veolia") was called in (by whom may be a matter of some dispute) to clean up the mess. At the end of four days it became clear that the operator of the facility – Techsol – could not pay. Marathon Petroleum Company ("Marathon"), the purchaser of the CTLO, took over official responsibility for cleanup. Veolia continued to perform the task at hand. Veolia, however, did not receive payment for work it had performed prior to Marathon's assumption of responsibility. Veolia filed this action, under CERCLA, to recover those costs.

CERCLA operates under a scheme in which parties found to be "covered persons" are held strictly liable for cleanup costs. *See* 42 U.S.C. § 9607. It further allows for those parties held liable under § 9607 to sue in their own right for contribution from others within the covered persons categories. *See* 42 U.S.C. § 9613; *U.S. v. Atlantic Research Corp.*, 551 U.S. 128 (2007). Plaintiff, Veolia, filed a § 9607 action against Rescar, Sloss, and GATX, among others. It sought to hold Rescar liable based upon its role inspecting the tank car which ultimately spilled, Sloss upon its role in loading CTLO into the tank car for shipment, and GATX upon its status as owner of the tank car. These defendants reacted by filing cross-claims for contribution against

1 While CERCLA's purpose is to promote prompt and effective cleanup, litigation under the statue has instead proven to be both protracted and labyrinthine. This case has been pending before this Court for nearly three years. In that time, the parties have submitted several hundred pages of briefs and the Court has issued several written opinions and orders. As a consequence, the parties and the Court are well acquainted with the facts. The Court's rendition of the case is not intended to be comprehensive, but rather to limit the mounting volume of pages in the record.

one another. Rescar and Sloss now argue that they are not covered persons under the statute and cannot be held liable under CERCLA. They each request summary judgment on the remaining CERCLA claims. Anticipating that Sloss and Rescar would be successful in their motions for summary judgment, GATX filed its motion to amend in order to seek contribution through an equitable remedy recognized by West Virginia common law.

## Discussion

### I. Motions by Rescar and Sloss for Summary Judgment

A. STANDARD OF REVIEW

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the Court will not "weigh the evidence and determine the truth of the matter[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the Court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the Court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, an evidentiary showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

B. ANALYSIS

Entities are covered persons and subject to liability under CERCLA if they fall within one of four categories set forth in the statute. 42 U.S.C. § 9607(a). The first includes only the "current 'owner' or 'operator' of the facility." *Nurad, Inc. v. William Hooper & Sons, Co.*, 966 F.2d 837 841 (4th Cir. 1992) (quoting 42 U.S.C. § 9607(a)(1)). The second includes, "any person who 'owned' or 'operated' the facility at the time of 'disposal' of a hazardous substance." *Id.* (quoting 42 U.S.C. § 9607(a)(2)). A "person who 'arranged for disposal or treatment' of a hazardous substance at the facility" falls within the third group. *Id.* (quoting 42 U.S.C. § 9607(a)(3)). Finally, a person is in the fourth group if they "accepted hazardous substances 'for transport to disposal or treatment facilities, incineration vessels or sites.'" *Id.* (quoting 42 U.S.C. § 9607(a)(4)).

Parties initially argued that the Court could find Rescar, Sloss, or both to be covered persons under either the second provision – owner or operator of the facility at the time of disposal – or the third provision – one who arranged for disposal or treatment of a hazardous waste. In prior Orders, the Court determined that neither Rescar or Sloss fit within the operator definition. *See* March 6, 2008 Memorandum Opinion and Order (Doc. 209); March 14, 2008 Memorandum Opinion and Order (Doc. 213). Further, the Court found that Rescar could not be considered an arranger. March 14, 2008 Order (Doc. 213). The Court left open the possibility that Sloss could be an arranger. All parties now agree, however, that the U.S. Supreme Court shut that door, with its decision in *Burlington Northern and Santa Fe Railway Co. v. U.S.* 129 S.Ct. 1870 (2009). GATX, as well as Veolia, now urge this Court to reevaluate its interpretation of operator liability.

The Court's prior interpretation of the boundaries of operator liability was based on plain statutory language. To satisfy this language, one must have "*at the time of disposal* of any hazardous substances owned or operated any facility at which such hazardous substances were disposed of." 42 U.S.C. § 9607(a)(2) (emphasis added). No party now contends that disposal occurred at any time before CTLO spilled from the tank car.[2] Likewise, no party contends that either Sloss of Rescar had control of the tank car at the time of the spill. It would therefore be a significant stretch of the statutory language to find either of these defendants potentially liable under the operator provision. While GATX and Veolia each point to caselaw which they say support this stretch, the Court remains unconvinced.

GATX relies principally on the Fourth Circuit Court of Appeals decision *Nurad v. William E. Hooper and Sons, Co.* 966 F.2d 837. *Nurad* involved the deposit of hazardous chemicals in underground storage tanks ("USTs") at a site which passed in ownership from William E. Hooper and Sons ("Hooper") to Kenneth Mumaw to Nurad. *Id.* at 840-41. On order from the Maryland Department of the Environment, Nurad instituted cleanup and then sued Hooper and Mumaw to recover its costs. *Id.* The Fourth Circuit determined that both Hooper and Mumaw would be covered persons based on their ownership of the site at the time of disposal. In so deciding, appellate court overturned the district judge's interpretation of "disposal." *Id.* at 844. Rather than being limited to "affirmative human conduct," as required by the district court, the Fourth Circuit held, " § 9607(a)(2) imposes liability not only for active involvement in 'dumping' or 'placing' of hazardous waste at a facility, but for ownership of the

2 In a previous motion, Veolia argued that the CTLO was actually a waste when it left Sloss's facility. This argument, however, has not been asserted here.

facility at a time that the hazardous waste was 'spilling' or 'leaking.'" *Id.* at 846. Applying this definition to Hooper and Mumaw, the court decided that they fit within the statutory category:

> the record supports the conclusion that both Hooper Co. and Mumaw owned the facility at a time when the mineral spirits were 'leaking' . . . . [n]either Hooper Co. nor Mumaw has pointed to anything to overcome the presumption that the leaking that has occurred was not a sudden event, but the result of a gradual and progressive course of environmental contamination that included these defendants' period of ownership."

*Id.*

The appeals court then went on to address Hooper's argument that it did not dispose of substances within the statutory meaning because it placed chemicals into the USTs for purposes of storage rather than disposal. The court concluded that Hooper had disposed of the chemicals, within the statutory meaning, by "depositing them in the USTs and abandoning them upon closing its finishing plant in 1962." The fact that they may have been initially placed in that tank as useful materials was irrelevant because "[t]he statute provides that 'disposal' includes the 'placing' of any hazardous waste 'into or on any land' so that such hazardous waste 'may enter the environment. . . and courts have specifically held that deposition hazardous waste into enclosed containers fits this definition." *Id.* (quoting 42 U.S.C. § 6903(3) (other citations omitted)).

GATX would have this Court read the Fourth Circuit's pronouncement that "disposal includes placing or any hazardous waste into or an any land so that such hazardous may enter the environment . . . [including] depositing hazardous waste into enclosed containers" in isolation from the rest of the opinion. *Id.* Through this language, GATX would graft onto CERCLA liability based upon causation. The statement, however, cannot be read separately from *Nurad*

opinion as a whole. The court made the statement in refutation of an argument that placement of material for storage could not constitute disposal and only *after* it had already determined that both Hooper and Mumaw owned the site when chemicals were leaking from the USTs. This Court has followed the holding of *Nurad*, allowing a CERCLA claim to be brought on the basis of an inadvertent spill from a tank car. The Court, however, cannot expand the operator definition past the statutory limits imposed by the language "at the time of disposal" and find parties with no control over the car at the time of the spill to be operators. Here, Rescar and Sloss are unlike the *Nurad* defendants Hooper and Mumaw; it is undisputed that neither Rescar nor Sloss owned or operated the tank car at the time of any leak or spill. They cannot fall within the operator definition of CERCLA.

Veolia relies on a different case in its attempt to create liability based on causation. The plaintiff picks up on a phrase from *U.S. v. Bestfoods*, 524 U.S. 51 (1998): ". . . CERCLA's 'operator' provision is concerned primarily with direct liability for one's own actions." Veolia also quotes the operator definition set forth in *Bestfoods* as

> someone who directs the workings of, manages, or conducts, the affairs of a facility. To sharpen the definition for purposes of CERCLA's concern with environmental contamination, an operator must manage, direct, or conduct operations specifically related to pollution, that is, operations having to do with the leakage or disposal of hazardous waste, or decisions about compliance with environmental regulations.

*Id.* at 66-67. Again, however, these statements are taken out of context and read far more expansively than they could have been intended by the Court. The Supreme Court granted certiorari in *Bestfoods* to determine "the extent to which parent corporations may be held liable under CERCLA for operating facilities ostensibly under the control of their subsidiaries." *Id.* at

60. One of the Court's holdings was that a parent corporation could be liable for its own actions in operating a facility and would not be protected by its subsidiary's ostensible ownership, thus the statement that – "CERCLA's 'operator' provision is concerned primarily with direct liability for one's own actions." *Id.* at 65.[3] In no way can the Court's statement be taken as direction to expand CERCLA liability so that anyone who played a causal role in a spill or leak would fall under the provision of operator liability. This Court would also point out that the Supreme Court's decision in *Bestfoods* did not address the statutory phrase "at the time of disposal." While its operator definition is helpful, it does not obviate that statutory language.

This Court's decision not to broaden CERCLA categories of potentially responsible parties to include anyone who may have had a causal role in the spill is bolstered by two other sources of authority. As pointed out in an earlier opinion, the original House bill which eventually became CERCLA imposed liability on "any person who caused or contributed to the release or threatened release." *Dedham Water Co. v. Cumberland Farms Dairy, Inc.* (1st Cir. 1989) (quoting H.R. 7020, 96th Cong.2d Sess. § 3071(a)(1)(C) (1980) 126 Cong. Rec. 26, 779, reprinted in 2 A Legislative History of CERCLA, at 39 (1983)). This language, focusing on causation, was deleted from the final bill. *Id.* at 1153. (citing 126 Cong. Rec. 31, 981-82,reprinted in 1 Legislative History of CERCLA at 821-24). Instead, legislators imposed strict liability on specific classes of persons connected with disposal. *Id.* Congress knew how to

3

The full quote reads, "[t]he fact that a corporate subsidiary happens to own a polluting facility operated by its parent does nothing, then, to displace the rule that the parent corporation is [itself] responsible for the wrongs committed by its agents in the course of its business, and whereas the rules of veil piercing limit derivative liability for the actions of another corporation, CERCLA's 'operator' provision is concerned primarily with direct liability for one's own actions." Id. at 65 (internal citations omitted).

impose liability based on causation if they so desired; it is not within this Court's role to resurrect statutory language rejected by Congress.

An additional source of authority comes from the recent U.S. Supreme Court decision in *Burlington Northern and Santa Fe Railway Co. v. U.S.* 129 S.Ct. 1870 (2009) ("*Burlington Northern*"). *Burlington Northern* involved cleanup of a site contaminated with agricultural chemicals. *Id.* In a lower court proceeding, the Ninth Circuit Court of Appeals found the manufacturer liable as an "arranger" under CERCLA because the manufacturer knew its product would leak and spill during transfer to containers at the purchaser's facility. *Id.* at 1877. The Supreme Court overturned this decision based upon the plain meaning of the term "arranger." *See generally, id.* The justices concluded that "[i]n order to qualify as an arranger, [the manufacturer] must have entered the sale of [the product] with the intention that at least a portion of the product be disposed of during the transfer process. . ." *Id.* at 1881. Knowledge alone was not enough because the plain meaning of the term "arrange" required intent. The Court did not disturb the finding by both lowers courts that the manufacturer had control over mode of delivery and transfer – it focused on the statutory definition, rather than the question of whether the manufacturer played any causal role in the spill. *See* 530 F.3d 918, 950-51 (9th Cir. 2008).

While this Court believes in a broad interpretation of CERCLA, to support its statutory purposes, it cannot ignore clear statutory language. Just as the Supreme Court limited the applicability of arranger liability based on the plain meaning of the term arranger, this Court must pay heed to the limits of operator liability to those who operated a facility at the time of disposal. As neither Rescar nor Sloss had any ability to manage, direct, or conduct operation of

the tank car at the time of disposal they cannot be found to be operators. The Court **GRANTS** each of their respective motions for summary judgment.

**II. GATX's Motion to Amend**

A. STANDARD OF REVIEW

GATX has filed a motion to amend its complaint in order to assert claims of equitable indemnification against Rescar and Sloss pursuant to rule 15(a) of the Federal Rules of Civil Procedure. Pursuant to Rule 15, a "court should freely give leave [to amend] when justice so requires." As interpreted by the Fourth Circuit Court of Appeals, this means that "leave to amend should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would be futile." *Matrix Capital Management Fund, LP v. BearingPoint, Inc.*, 576 F.3d 172 (4th Cir. 2009). Rescar and Sloss oppose the motion to amend on the grounds that claims for equitable contribution are preempted by CERCLA, and therefore futile.

B. ANALYSIS

There are three ways in which federal law may preempt state law: express preemption, field preemption, and conflict preemption. *H&R Block Eastern Enterprises, Inc. v. Raskin,* -- F.3d --- (4th Cir. 2010), 2010 WL 155383. There is no express preemption by CERCLA, in fact, the statute contains two savings clauses. The first provides, "[n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." 42 U.S.C. § 9614(a). The other states, "[n]othing in this chapter shall affect or modify in any way the obligations or liabilities or any person under other Federal or State law, including common law,

with respect to releases of hazardous substances or other pollutants or contaminants." 42 U.S.C. § 9652(d) Courts analyzing the issue have found these savings clauses to additionally preclude field preemption. *See e.g. New Mexico v. Gen. Elec. Co.* 467 F.3d 1223 (10th Cir. 2006); *Fireman's Fund Ins. v. City of Lodi*, 302 F.3d 928 (9th Cir. 2002). Preemption under CERCLA exists, if at all, as a result of direct conflict between state and federal law.

As explained above, Rescar and Sloss fall outside of the CERCLA recovery scheme because they do not fall within any statutory category of covered person. They are not within the CERCLA created liability and contribution schemes. *See* 42 U.S.C. §§ 9607, 9613. There is no indication that CERCLA intended to preclude liability for those outside these categories and, indeed, explicit statements to the contrary through the savings clauses. *See e.g.* 42 U.S.C. §§ 9614(a), 9652(d) (quoted *supra*). The Court can find no conflict between state law claims for indemnity and the statutory scheme Congress created. State law claims for equitable indemnification are not futile, nor has any allegation of bad faith or prejudice. The Court hereby, **GRANTS** GATX's motion to amend.

**Conclusion**

For the reasons explained above, the Court **GRANTS** both Rescar's motion for summary judgment (Doc. 336) and Sloss's motion for summary judgment (Doc. 357). It simultaneously **GRANTS** GATX's motion for leave to amend its cross-claims against these parties. The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: February 18, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE